# EXHIBIT 4

# EXHIBIT A

# UM CREDIT UNION — HOME EQUITY LOAN APPLICATION

Credit Union Account Number: _____

- ☐ Visa Gold Home Equity Line of Credit
- ☐ Home Equity Line of Credit
- ☒ Closed End Home Equity Loan:

Purpose of Loan: CONSOLIDATE ALL DEBT/HOME IMPROVEMENT

Amount of Loan: $35,000.00  42,000

Term: ☐ 5 Year  ☒ 10 Year  ☐ 15 Year  ☐ 20 Year  ☐ Other

## APPLICANT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name | MELISSA GATZA | JOSEPH GATZA |
| Telephone Home | ( ) | ( ) |
| Telephone Cellular | ( ) | ( ) |
| Marital | ☒ Married ☐ Separated ☐ Unmarried | ☒ Married ☐ Separated ☐ Unmarried |
| Present Address | 3320 MT HOPE RD, GRASS LAKE, MICHIGAN 49240 | 3320 MT HOPE RD, GRASS LAKE, MICHIGAN 49240 |
| Own/Rent | ☒ Own ☐ Rent | ☐ Own ☐ Rent |
| # of Years | 10 | |
| Name of Employer | MICHIGAN MEDICINE | ST JOSEPH CHELSEA |
| Self-Employed | ☐ | ☐ |
| Yrs on Job | 16 | 4 |
| Yrs in Profession | 22 | 13 |
| Position/Type of Business | RADIOGRAPHER | RADIOGRAPHER |
| Business Phone | (734) 9364589 | ( ) |
| Gross Monthly Income | $4,150.00 | $3,432.00 |
| Gross Overtime Pay | | |
| Bonuses/Commissions | | |
| Other Income* | | |
| Description of "Other" Income | | |
| Total | $4,150.00 | $3,432.00 |

\* Notice: Alimony, child support or separate maintenance income need not be revealed if the Borrower or Co-Borrower does not choose to have it considered for repaying this loan.

## PROPERTY INFORMATION

| Street Address of Subject Property | City | County | State | Zip |
|---|---|---|---|---|
| 3320 MT HOPE RD | GRASS LAKE | JACKSON | MI | 49240 |

| Purchase Price of Home | Present Value | Title is held in what name(s) | Year Purchased |
|---|---|---|---|
| $125,000.00 | $200,000.00 | MELISSA GATZA | 2011 |

| Mortgage Balance | Is Your Mortgage Escrowed? | Property Taxes | Property Insurance | Association Fee |
|---|---|---|---|---|
| $129,762.00 | ☒ Yes  ☐ No | $2,294.00 | $687.00 | $0.00 |

## OTHER REAL ESTATE OWNED

| Address of Property | Type of Property | Balance of Mortgages and Liens | Gross Rental Income | Mortgage Payments | Taxes and Insurance |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## DECLARATIONS

| If you answer "Yes" to any questions A through H, please use continuation sheet for explanation | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| A. Are there any outstanding judgments against you? | ☒ | ☐ | ☒ | ☐ |
| B. Have you been declared bankrupt within the past 7 years? | ☐ | ☒ | ☐ | ☒ |
| C. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☒ | ☐ | ☒ |
| D. Are you a party to a lawsuit? | ☐ | ☒ | ☐ | ☒ |
| E. Have you directly or indirectly been obligated on a loan that resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ | ☐ | ☐ | ☐ |
| F. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | ☐ | ☒ | ☐ | ☒ |
| G. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☐ | ☒ | ☐ |
| H. Are you a co-maker or endorser on a note? | ☐ | ☒ | ☐ | ☒ |
| I. Are you a U.S. citizen? | ☒ | ☐ | ☒ | ☐ |
| J. Are you a permanent resident alien? | ☐ | ☒ | ☐ | ☒ |
| K. Do you intend to occupy the property as your primary residence? If "yes," complete question "L" below | ☒ | ☐ | ☒ | ☐ |
| L. Have you had ownership interest in property in the last three years? | ☐ | ☒ | ☐ | ☒ |
|    1. What type of property did you own -- principal residence (PR), second home (SH), or investment property (IP)? | | | | |
|    2. How did you hold title to the home -- solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

Our credit decision in granting this loan request is based on information provided in this application and a report from an established credit reporting agency. The results of our decision will be made available to you in accordance with the terms of the Fair Credit Reporting law and the Equal Credit Opportunity Act.

I / We certify that all statements made by me / us on this application and on the reverse are true and complete and are submitted for the purpose of obtaining credit and that the Credit Union may rely on them for such determination.

| Borrower's Signature | Date: | Co-Borrower's Signature | Date: |
|---|---|---|---|
| x /s/ Melissa Gatza<br>MELISSA GATZA | 04/12/2017 | x /s/ Joseph Gatza<br>JOSEPH GATZA | 04/12/2017 |

For Credit Union Use Only:
Date Received: 4/14/17   Received by: _Jon Riggs_   NMLS# _____
University of Michigan Credit Union NMLS# 712343   ☐ In Person   ☐ By Phone   ☒ By Mail

# NOTE

Loan #

| May 26, 2017 (Date) | Ann Arbor (City) | Michigan (State) |

3320 Mount Hope Rd, Grass Lake, Michigan, 49240-9186
(Property Address)

NOTICE TO BORROWER: In this contract, the words "I", "me", "mine", and "my" refer to those who sign this note. The term "Credit Union" means University of Michigan Credit Union, 340 E. Huron Street, Suite 100, Ann Arbor, MI 48104-1909.

The following describes the terms of the closed-end equity loan, which the Credit Union and I have agreed upon.

## 1. BORROWER'S PROMISE TO REPAY

In return for the closed-end equity loan that I have received, I promise to pay U.S. $53,426.51 (principal) plus interest, to the order of the University of Michigan Credit Union. The Lender who is entitled to receive payments under this Note is called the 'Note Holder'.

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 11.000%.

## 3. PAYMENTS

I promise to pay to the Credit Union principal and interest by making payments every month. I will make my monthly payments on the 8th day of each month. My first payment will be due beginning on **July 8, 2017**. Each monthly payment will be applied to late payments, interest, and then principal. I will make payments each month until I have paid all principal and interest and any other charges that I may owe under this Note. This loan will mature on **June 8, 2032** (Maturity Date). If at this time I still have amounts owing under this Note, I will pay those amounts in full on that date.

All payments that I make to the Credit Union will be in lawful money of the United States and will be made at **333 East William, Ann Arbor, Michigan 48104** or at any other Credit Union branch location.

**My monthly payment will be in the amount of U.S. $ 609.87.**

I can always make payments of principal at any time before they are due. I agree, however, to notify the Credit Union in writing of my intentions regarding such prepayment. I may also make a full prepayment or partial prepayments without being assessed a prepayment charge. All such prepayments will be applied to reduce the amount of principal that I owe under this Note. Any such partial prepayments will not, however, change the due date or the amount of my monthly payment unless the Credit Union agrees in writing to those changes.

## 4. LATE CHARGE

If a payment is more than 10 days late, you may be charged a late charge. The late charge will be $25.00 for any one late payment.

## 5. BORROWER'S FAILURE TO REPAY

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Credit Union may, after any required notices and to the extent permitted by law, declare the entire balance of my loan immediately due and payable if:

a. I fail to meet the repayment terms under this contract for any reason, including to the extent permitted by law, my filing of a bankruptcy proceeding; or
b. I make a false or misleading statement on my closed-end equity loan application and/or in any representation including acts of omission to the Credit Union while my loan is outstanding and to the extent that fraud or misrepresentation as determined by state law occurs; and/or
c. I act or fail to act in a way that adversely affects the Credit Union's security for my loan or any right of the Credit Union in that security, by way of example and not of limitation, I sell, assign or otherwise transfer my interest in the property securing the loan.

If the Credit Union has required me to pay the entire balance of my loan immediately as described above, the Credit Union will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. Additionally, the Credit Union may suspend other services if my loan is past due.

## 6. METHOD OF NOTIFICATION

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail (unless applicable law requires a different method) to me at the Property Address above or at a different address if I give the Credit Union a written notice of my different address.

Any notice that I am to provide to the Credit Union under this Note will be given by mailing it by first class mail to the Credit Union at the address shown above or at a different address if I am given notice of that address.

## 7. SIGNER OBLIGATIONS

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all promises made in this Note. The Credit Union may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 8. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. 'Presentment' means the right to require the Credit Union to demand payments of amounts due. 'Notice of dishonor,' means the right to require the Credit Union to give notice to other persons that amounts due have not been paid.

## 9. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Credit Union under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same day as this Note, protects the Credit Union from possible losses which might result if I do not keep the promises I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.** If all or any part of the property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Credit Union's prior written consent, the Credit Union may, at its option require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by the Credit Union if federal law as of the date of this Security Instrument prohibits exercise.

If the Credit Union exercises this option, the Credit Union shall give the Borrower notice of acceleration. This notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, the Credit Union may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
Melissa A. Gatza                              Borrower
SSN:

_____(Seal)
Joseph C. Gatza                              Co-Borrower
SSN:

University of Michigan Credit Union NMLS:
Originated by Joan Repp NMLS:

# EXHIBIT B



## First American Title Company

# Electronically Recorded Document

Ref 1                             52852011

The attached document was recorded on your behalf by First American Title Company via our electronic recording process.

We are returning your original document along with this cover page that includes the post-recording information at the bottom. To view a full image of the post-recorded document, please visit our website at www.lendersadvantage.com.

Thank you for allowing First American Title Company to record your documents.



**Recorded Date/Time:** *8/17/2017 2:19 PM*
**Instrument Number:** *2776416*
**Book:**
**Page:**

**County/State:** *Jackson/MI*
**Borrower:** *MELISSA A. GATZA*
**Document Type:** *Mortgage*
**Document Seq:** *1*

## Do not detach. This page is now a permanent part of this document.

Please visit www.famortgageservices.com to view the entire Recorded document

1100 Superior Ave
Cleveland, OH 44114
TEL: (216) 241-1278
TOLL: (800) 221-8683
<http://www.famortgageservices.com>

DocuSign Envelope ID: 9ABDCF6F-7FB7-4EC6-B121-81E9F8235C40

## CLOSED END HOME EQUITY LOAN
## (NOT FOR PURCHASE MONEY)
## MORTGAGE

Dated May 26, 2017

Loan #

### REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

This mortgage (Security Instrument), is executed on May 26, 2017 between:

| | |
|---|---|
| the mortgagor(s) (Borrower(s)): | Melissa A Gatza and Joseph C Gatza, wife and husband |
| whose address is: | 3320 Mount Hope Rd<br>Grass Lake, MI 49240-9186 |
| and:<br>the mortgagee (Lender):<br>whose address is: | University of Michigan Credit Union<br>340 E. Huron Street, Suite 100<br>Ann Arbor, MI 48104-1909 |

The Borrower owes and agrees to repay to the Lender the principal amount of:

**$53,426.51** Fifty-three thousand four hundred twenty-six and 51/100 Dollars

As evidence of this debt, the borrower also receives a Note dated this same day, which provides for repayment by monthly payments, with the full debt due and payable on:

June 8, 2032

### PROPERTY DESCRIPTION

The Borrower(s) does hereby warrant, grant and convey to Lender with power of sale, the following property:

Land situated in the Township of Grass Lake, Jackson County, Michigan, to-wit: See Attached Exhibit A

Commonly known as:
- Street: 3320 Mount Hope Rd
- City: Grass Lake
- State/Zip Code: MI 49240-9186
- County: Jackson
- Tax Code: 000-10-21-301-007-00

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil, and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument as the "Property".

BORROWER CONVENANTS THAT Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal and interest on the debt evidenced by the Note and any late charges due under the Note.

2. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraph 1 shall be applied: first, to late charges; second, to interest due under the Note; and last, to principal due.

3. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument and leasehold payments or ground rents, if any. Borrower shall pay these obligations on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph and receipts evidencing the payments.

   Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien or forfeiture of any part of the property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

4. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

   All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

   Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's

Page 2 of 6

19-40978-mbm    Doc 15-4    Filed 02/14/19    Entered 02/14/19 10:55:02    Page 11 of 16

security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days of notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraph 1 or change the amount of the payments. If under paragraph 18 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

5. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Development.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or detioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit developement, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

6. **Protection of Lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may materially affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and the Lender's rights in the Property. Lender's actions may include paying any attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 6, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 6, with interest thereon at the Note rate, shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment. Nothing contained in this paragraph 6 shall require Lender to incur any expense or take any action hereunder.

7. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

8. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to the Lender subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

9. **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liablility of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

DocuSign Envelope ID: 9ABDCF6F-7FB7-4EC6-B121-81E9F8235C40

10. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements contained herein shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Security Instrument: (b) is not personally liable on the Note or under this Mortgage; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the Borrower's consent and without releasing that Borrower or modifing this Mortgage as to that Borrower's interest in the Property.

11. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit: and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

12. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at the Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims, or defenses which Borrower may have against parties who supply labor, materials, or services in connection with improvements made to the Property.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by Notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument at the time of execution or after recordation hereof.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. This notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

DocuSign Envelope ID: 9ABDCF6F-7FB7-4EC6-B121-81E9F8235C40

17. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument: or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note had no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fee; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unimpaired. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 16.

18. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall mail notice to Borrower as provided in paragraph 13. This notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and cost of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in paragraph 13. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all cost and expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

19. **Lender in Possession.** Upon acceleration under paragraph 18 or abandonment of the Property, Lender (by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument.

20. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument without charge to Borrower.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were part of this Security Instrument. (Check applicable box or boxes).

☐ Condominium Rider
☐ Planned Unit Development
☐ 2-4 Family Rider
☐ Other(s)(specify)

19-40978-mbm    Doc 15-4    Filed 02/14/19    Entered 02/14/19 10:55:02    Page 14 of 16

DocuSign Envelope ID: 9ABDCF6F-7FB7-4EC6-B121-81E9F8235C40

## SIGNATURES - Mortgagor(s) / Witnesses and Notarization

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed and delivered in the presence of:	Signed and sealed by Mortgagor(s):

_____		*Melissa Gatza*
(Witness)					Melissa A Gatza			(Borrower)

_____		*Joseph C Gatza*
(Witness)					Joseph C Gatza			(Co-Borrower)

STATE OF MICHIGAN, County of Washtenaw

The foregoing instrument was acknowledged before me on this May 26, 2017 by Melissa A Gatza and Joseph C Gatza, wife and husband.

JOAN REPP
NOTARY PUBLIC, STATE OF MI
COUNTY OF JACKSON
MY COMMISSION EXPIRES Jun 9, 2018
ACTING IN COUNTY OF ~~WASHTENAW~~

Joan Repp, Notary Public
~~Washtenaw~~ County, Michigan
Jackson
My Commission expires: 6/9/2018

University of Michigan Credit Union NMLS:
Originated by Joan Repp NMLS:

Drafted by: Joan Repp				~~When recorded, return to:~~
University of Michigan Credit Union		University of Michigan Credit Union
PO Box 7850					PO Box 7850
Ann Arbor, MI 48107				Ann Arbor, MI 48107

Page 6 of 6

EXHIBIT A

SITUATED IN THE TOWNSHIP OF GRASS LAKE, COUNTY OF JACKSON AND STATE OF MICHIGAN:

BEGINNING AT A POINT 1115 FEET SOUTH OF THE NORTHEAST CORNER OF THE WEST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 21, GRASS LAKE TOWNSHIP, TOWN 2 SOUTH, RANGE 2 EAST, THENCE WEST 447 FEET, THENCE SOUTH 165 FEET, THENCE EAST 447 FEET, THENCE NORTH 165 FEET TO THE POINT OF BEGINNING.

PPN:   000-10-21-301-007-00
MELISSA A. GATZA AND JOSEPH C. GATZA, WIFE AND HUSBAND

3320 MOUNT HOPE ROAD, GRASS LAKE MI 49240
Loan Reference Number  :  58094
First American Order No:  52852011
Identifier:



When Recorded, Return to:
   First American Mortgage Services
   1100 Superior Avenue, Suite 200
   Cleveland, OHIO 44114

GATZA
52852011                         MI
FIRST AMERICAN ELS
MORTGAGE